UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY L. MOORE,                          )
                                           )
                    Plaintiff,             )
                                           )
        vs.                                )  No. 10 C 7376
                                           )
LOCAL UNION 597                            )
PIPEFITTERS' ASSOCIATION, et al.,          )  Chicago, Illinois
                                           )  May 24, 2012
                    Defendants.            )  9:12 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES F. HOLDERMAN

APPEARANCES:

For the Plaintiff:        A.Y. COLEMAN & ASSOCIATES
                          BY:  MS. ARLENE Y. COLEMAN
                          70 East Lake Street, Suite 540
                          Chicago, Illinois  60601
                          (312) 750-1419

For the Defendants:       HINSHAW & CULBERTSON
                          BY:  MS. AIMEE E. DELANEY
                          222 North LaSalle Street, Suite 300
                          Chicago, Illinois  60601-1081
                          (312) 704-3000

Also Present:             Mr. Anthony Moore, Plaintiff

COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 2524-A
Chicago, Illinois  60604
(312) 435-5594
*colleen_conway@ilnd.uscourts.gov*

1      (Proceedings heard in open court:)

2           THE CLERK:  10 C 7376, Moore v. Pipefitters', motion

3    to withdraw.

4           MS. DELANEY:  Good morning, Your Honor.

5           Aimee Delaney for the defendants.

6           THE PLAINTIFF:  Good morning, Judge Holderman.

7           Anthony Moore, plaintiff.

8           THE COURT:  Good morning.

9           Do you know where your lawyer is?

10          THE PLAINTIFF:  No, Your Honor, I do not.

11          MS. DELANEY:  We -- I actually anticipated that

12   either Ms. Coleman or somebody would be here.  We have been in

13   contact.

14          THE COURT:  Okay.  Could you do this?  Just as I'd

15   asked that other lawyer to do, would you mind stepping out and

16   calling Ms. Coleman?

17          MS. DELANEY:  That's fine.

18          THE COURT:  Either one of you?

19          MS. DELANEY:  Yes, that's fine.

20          THE COURT:  And seeing what the status is?  I know

21   there were some delays this morning in the traffic, and perhaps

22   she's just running late.

23          MS. DELANEY:  Okay.

24          THE COURT:  Okay?  We will call it again.  Thank you.

25          (Whereupon, the Court heard other matters on his call.)

1      (Resumed at 9:45 a.m.)

2           THE CLERK:  10 C 7376, Moore v. Pipefitters'.

3           MS. COLEMAN:  Good morning, Your Honor.

4           Arlene Coleman here on behalf of the plaintiff,

5      Anthony Moore.

6           THE COURT:  Good morning.

7           MS. DELANEY:  Good morning, Your Honor.

8           Aimee Delaney again on behalf of the defendants.

9           THE COURT:  Good morning.

10          THE PLAINTIFF:  Good morning again, Your Honor.

11          Anthony Moore, plaintiff.

12          THE COURT:  Good morning.

13          All right.  What is the status today?

14          MS. COLEMAN:  Well, Your Honor, I have noticed up a

15     motion to withdraw today.

16          You had previously granted the plaintiff additional

17     time to file their response to the defendants' motion to

18     dismiss.  It was our intention to file that motion, but -- our

19     response, rather --

20          THE COURT:  Right.

21          MS. COLEMAN:  -- with an amended -- a proposed

22     amended third complaint.  Mr. Moore instructed me not to do

23     that and to proceed with, you know, my motion to withdraw.

24          THE COURT:  All right.  Mr. Moore --

25          MS. COLEMAN:  We have -- I'm sorry.

1           THE COURT:  Go ahead.

2           MS. COLEMAN:  I just wanted to let the Court know, we

3     have initiated discovery.  There has been some

4     exchange/response from the defendants, and several depositions

5     are scheduled ten --

6           MS. DELANEY:  In the next --

7           MS. COLEMAN:  In ten days.

8           MS. DELANEY:  Yeah, pending next week.

9           Mr. Moore, I think, identified about five or six

10    witnesses in the initial disclosures.  We sent out subpoenas to

11    those individuals and set them up for next week.  And we're in

12    the process of confirming them.  I have one confirmed, and the

13    others are sort of in, like I said, in the process of

14    confirming.  So that's kind of where we stand on that.

15          THE COURT:  Okay.  All right.  Mr. Moore, you

16    understand that if I grant this motion, then you'll be *pro se*?

17          THE PLAINTIFF:  Yes, Your Honor.  Good morning, Your

18    Honor.

19          I do concur with Mrs. Coleman, and she is quite

20    correct.  The complaint, everything, I finally understand it

21    now, what the problem was with the amended complaint.  It does

22    need to be changed.  There's some things in there that

23    shouldn't be in there.  I believe I can handle that.  It's just

24    they got to be taken out.

25          These things are costing -- that thing cost me

1   $4,000. So if she does it again, I guess it will be another

2   $4,000. It's getting -- you know, let's -- we can move along

3   from there.

4          Ms. Delaney and I have been talking prior to you

5   coming in, and we're starting to get things moving along as far

6   as the case is concerned.

7          The people to be, what, deposed, I'm not sure who

8   they are. I don't know who they are. Okay? Mrs. Coleman has

9   not confirmed with me exactly who these people are. She's

10   confirmed, Ms. Delaney confirmed, and I got a call from one

11   gentleman last night, Mr. Daniels, so he is confirmed, and

12   there are some others. She wants to know who they are, and I'm

13   going to work with her, send her some e-mails. So we've got

14   that contact going. That's going along just fine.

15          I would also grant -- and I'll -- if you remember

16   before, Your Honor, when we had this motion to dismiss, I had

17   that pile of stuff in here, and none of it -- you know, it

18   didn't work. That was a lot of ink and paper. So I heard you

19   tell the other gentleman, so I wanted to make sure that we had

20   your leave, your permission to do this before I started writing

21   things up. You know, again, I'm *pro se* and not working, so

22   paper and ink are kind of tight.

23          There are some other issues we have to deal with as

24   far as discovery is concerned. There's a -- oh, and whatever

25   has been given to the plaintiff as far as discovery is

1    concerned, again, I'm not aware of it. So, as far as I know, I

2    don't know what the defendant has, you know, as far as

3    discovery that's given. I have no idea.

4          There's also an issue regarding some 15 boxes of -- I

5    believe they are manpower request sheets.

6          If you remember, Your Honor, when we were here with

7    Mr. Cohen from the EEOC and I was trying to get the

8    investigative files, and I talked to you about having this

9    stuff, you know, given to me in electronic form, well, it comes

10   to my attention now that -- and if I remember, after talking to

11   Mr. Daniels last night, Mrs. Potter had the same problem,

12   because the Union keeps these manpower request sheets, which

13   that is the nexus of my complaint and the nexus of this, we

14   can't get a study going, we can't show how many fitters we

15   have, how many African-Americans without these manpower request

16   sheets. But to my knowledge now -- and I remember in the past

17   they're all kept on paper. So that's an issue that needs to be

18   brought up.

19         And these are the things that I would like to work

20   with Ms. Delaney on as I proceed *pro se* and as I seek *pro bono*

21   counsel. And also, simultaneously, if I can't find anyone, to

22   again ask the Court for, you know, a pauper status and maybe to

23   appoint someone.

24         But I do have a *pro bono* company in mind, but I did

25   not want to -- I talked to them just initially. But, again, I

1  want to wait for your order and wait for your decision before

2  I -- as I told Ms. Delaney in my e-mail, I want to keep my

3  powder dry this time and see what you think about all of this.

4          THE COURT:  Well, I think you are better off with a

5  lawyer.

6          THE PLAINTIFF:  I concur.  And, again, I'm in the

7  process of trying to find this *pro bono*, you know, legal firm

8  to give me a hand.

9          But in the meantime, we can get some of these grunt

10  type of things done.  The discoveries, we can get the discovery

11  going back and forth.

12          The documents that I speak of, even Mrs. Coleman

13  cannot understand the complexity of the documents that I'm

14  talking about.  You have different pipefitting shops, the

15  difference between Amoco Chemical and Amoco, the refinery.  You

16  have service fitters.  You have heating and air conditioning

17  fitters.  You have sprinkler fitters that do the spots you see

18  in there in the ceiling.  So this stuff is going to have to go

19  through me anyway, but whoever I get, they won't understand it.

20          And so if I start to get a hold of this stuff and

21  make it to where if I do get an attorney, I can show them what

22  they got going and it will -- and begin to tie it together, and

23  it will make sense to whoever I ask for help.

24          THE COURT:  Okay.  Well, I don't know that you are

25  going to have an attorney that's going to be better at

1   understanding that than Ms. Coleman.

2           THE PLAINTIFF:  But --

3           THE COURT:  I don't know that.

4           THE PLAINTIFF:  I -- well, you know, and I probably

5   owe Ms. Coleman an apology.  I finally understand the mistake

6   that was made with the amended complaint.  But, you know, it's

7   like somebody working on your car.  If they say it's the $O_2$

8   sensor, and you go ahead and buy that thing, which costs a few

9   hundred bucks, then you turn around and say, wait a minute.  I

10  think it's spark plugs, you know, this kind of -- Your Honor,

11  I'm going to be blunt.  When we left out of here last time, I

12  think we got two blocks and it wasn't working.  We walked

13  together two blocks, and we were pretty much right back where

14  we started from.  It's just not -- it's unattainable.  I mean,

15  I just -- I could be wrong.

16          I give you one example, this issue of the consent

17  decree being out of date.  Well, on page 58, paragraph 36, it

18  clearly states that this thing is not -- it doesn't have a

19  shelf life.  So we don't agree on that.

20          I talked to Mr. Daniels last night.  He -- we don't

21  understand that.  I was with Judge McGarr, and I know exactly

22   -- and I was with Ms. Potter, and I know what Judge Alesia

23  intended.  He did not intend for this thing to happen over and

24  over and over again.  And so we don't agree with that.

25          And I believe you are, to term a phrase, the decider.

1  I do not want to concede this particular document that I helped

2  Mr. Daniels fight for without you deciding.  I want you to

3  decide whether you think it has a shelf life or not.

4  And that consent decree is the nexus of this case.

5  It's like an elephant in the room, Your Honor.  One side says

6  that the elephant is not there.  The other side says that

7  elephant is there, and we help put it there, and so did Judge

8  Alesia, and so did Judge McGarr, and you have to be, to coin a

9  phrase, the sober judge to decide whether it is or not.  And

10  it's going to turn this case one way or another, as you can

11  clearly see.  The consent decree keep coming up over and over

12  again.  Now we have Mr. Daniels deposed.  God-Almighty, we will

13  have Mrs. Potter and Judge McGarr in here, if he's still, you

14  know --

15  THE COURT:  Judge McGarr is deceased.

16  THE PLAINTIFF:  I mentioned that to Ms. Delaney

17  today.

18  THE COURT:  That was the judge --

19  THE PLAINTIFF:  Yeah, there was a mistake made

20  regarding Frank McGarr, but that was a mistake.

21  THE COURT:  Yes, as is Judge Alesia.

22  THE PLAINTIFF:  Okay.  Well, God rest them both.

23  THE COURT:  Yes.  Both of those judges are --

24  THE PLAINTIFF:  God rest them both.  And Frank

25  Daniels is 65 years old, and Mrs. Potter is not a spring

1  chicken anymore.

2         So this is kind of where we're headed with this.  And

3  so I think I would probably be the best person to put these

4  things together.

5         It would take me millions of dollars to get

6  Mrs. Coleman or probably anybody else -- Mrs. Potter understood

7  this stuff.  Okay?  She understood the difference between

8  pneumatic mechanics and one location versus the other.  597 can

9  run circles around you, Your Honor, and with these different

10  places.  This guy is on this job and he goes to that job.  You

11  know, this person is a fireman.  He works as a pipefitter three

12  days and goes back to the firehouse.  And nobody understands

13  this type of stuff.

14         THE COURT:  One of the things, though, we will have

15  to do if you proceed *pro se* is you will have to represent

16  yourself.

17         THE PLAINTIFF:  Yes, Your Honor.

18         THE COURT:  And you will have to focus on the legal

19  issues as well as the factual issues --

20         THE PLAINTIFF:  Yes, Your Honor.

21         THE COURT:   -- so that we can move efficiently with

22  the case.

23         THE PLAINTIFF:  Yes, Your Honor.

24         THE COURT:  That's not easy for an individual who

25  doesn't have a law school education, is not a member of the

1  bar.  But you are willing to go ahead and do that?

2  THE PLAINTIFF:  Might the answer be to file for a

3  pauper status and have an appointment?

4  THE COURT:  Well, you can certainly go ahead and file

5  for that, and I will make an evaluation of it, but there is

6  certainly no guarantee that a lawyer selected from the trial

7  bar, as experienced as that lawyer may be --

8  THE PLAINTIFF:  Yes.

9  THE COURT:  -- will have a better understanding than

10  Ms. Coleman of the factual questions.  You say they are so

11  complicated, that's why I hesitate to grant the motion.

12  THE PLAINTIFF:  I agree, but --

13  MS. COLEMAN:  Your Honor --

14  THE COURT:  Ms. Coleman, is there anything you desire

15  to say?

16  MS. COLEMAN:  Yes, Your Honor.  I -- unfortunately, I

17  cannot finance Mr. Moore's lawsuit.

18  THE PLAINTIFF:  Yes.

19  MS. COLEMAN:  I have a small practice.

20  THE PLAINTIFF:  Yes.

21  MS. COLEMAN:  And some in federal court and in the

22  state court.  Mr. Moore has not been able to keep his

23  obligation to me financially, and we have continued to work.

24  His complaint didn't cost $4,000, but the work that has been

25  involved, with discovery, the whole enchilada, has cost money

1    and -- which I am willing to do, I was willing to do stuff

2    fortuitously, but -- or to move the case forward, but at this

3    juncture, I cannot work with Mr. Moore, Your Honor.  I just

4    can't do it.

5              We do have fundamental differences in terms of my

6    understanding of the law and his understanding of the

7    application of the law in his case.  I -- you know, I recently

8    received a letter instructing me:  Do not file anything.  You

9    are fired.  I cannot work under these circumstances, Your

10   Honor.

11             Mr. Moore owes me quite a bit of money on the case,

12   but -- as we're facing discovery, and he has no resources and

13   has no intention of paying me, in my opinion.

14             This started out wrong.  What he represented he would

15   do at the beginning of the lawsuit, prior to my coming in,

16   rather, he did not do that.  And we have differences of

17   opinions about things.  I have that with clients.  But I

18   cannot, I cannot go forward with Mr. Moore, Your Honor.  I'm so

19   sorry.

20             THE PLAINTIFF:  She is correct, Your Honor, about my

21   financial situation.  Part of the problem with that is this,

22   and this goes into the case, and I don't really mean to get

23   into it too much, but this is something you kind of have to

24   understand and what my main complaint is.

25             75% of the work is done through this telefitter

1  network that Judge McGarr complained about.  I'm excluded from
2  it.

3        Prior to some weeks ago, I gave Mrs. Coleman
4  approximately 30 e-mails and faxes to various contractors.  I
5  got one reply, which was, "No, thank you, sir.  We are a
6  service shop.  No, thank you."  So -- but these guys were
7  working pretty good.  And so I'm excluded from it.  So that's
8  the problem.

9        Of course I can't work.  That's what this is about.
10  I can't pay her.  I can't pay anybody anything.  And she is
11  correct about that.  Of course, of course this is -- freedom is
12  not free, Your Honor.  That's one of my monikers.  Of course it
13  isn't.  But I'm kept out of work.  I cannot work.  That's just
14  that simple.

15        The EEOC group is all on one job, Your Honor.  Do you
16  remember the people we spoke about, the guys in the EEOC?
17  They're all at one job, and that's out at Amoco.
18              THE COURT:  Oh, yeah, I remember your case.
19              THE PLAINTIFF:  Okay.
20              THE COURT:  And I remember bringing in the EEOC folks
21  to --
22              THE PLAINTIFF:  Right, right.
23              THE COURT:  -- assist --
24              THE PLAINTIFF:  All of those --
25              THE COURT:  -- in the resolution of it.  And what I

1    am saying now is we're spending a lot of time --

2                    THE PLAINTIFF:  Yes.

3                    THE COURT:  -- in dealing with --

4                    THE PLAINTIFF:  Yes.

5                    THE COURT:  -- one question --

6                    THE PLAINTIFF:  Yes.

7                    THE COURT:  -- and that is whether I grant Ms.

8    Coleman's motion to withdraw.

9                    THE PLAINTIFF:  Yes.

10                   THE COURT:  That's why I am saying as a lawyer, you

11   got to focus.  We are not trying your case today.

12                   THE PLAINTIFF:  I understand that.

13                   THE COURT:  We are dealing with that motion.

14                   THE PLAINTIFF:  I understand.

15                   THE COURT:  And once I deal with that motion, then I

16   am going to deal with the next issue.

17                   THE PLAINTIFF:  Yes.

18                   THE COURT:  So that's what we are talking about.

19                   Is there anything further you want to say on that?

20                   THE PLAINTIFF:  No, Your Honor.  No, no, I have not.

21                   THE COURT:  Okay.  I am going to grant the motion,

22   then.

23                   Ms. Coleman, I do ask, however, for you to provide

24   Mr. Moore, your former client, the discovery information so

25   that he can proceed efficiently *pro se*.

1          Are you willing to do that?

2          MS. COLEMAN:  Absolutely, Your Honor.

3          THE COURT:  All right.

4          MS. COLEMAN:  There is no problem with that.

5          THE COURT:  I thought you would be.  And so if

6    Mr. Moore -- when could he obtain that?

7          MS. COLEMAN:  Whenever he would like to come by my

8    office.

9          THE COURT:  All right.

10          MS. COLEMAN:  There's a disk --

11          THE COURT:  Even today?

12          MS. DELANEY:  We produced what we could

13    electronically by disk.  It should be fairly straightforward.

14    And if you have any problems, we can make additional copies as

15    well.  So that's not a problem.

16          THE COURT:  Okay.

17          MS. DELANEY:  The problem is probably going to be

18    with the --

19          MS. COLEMAN:  Fifteen boxes.

20          MS. DELANEY:  -- fifteen pages -- or fifteen boxes of

21    documents.

22          THE COURT:  Yes.  Well, that's -- and those are at

23    your office, Ms. Coleman?

24          MS. COLEMAN:  No, sir, they are not.

25          MS. DELANEY:  Those are at Local 597.  And what we

1    had asked plaintiff was to either indicate if they would be

2    willing to come to the law firm and inspect what they want.

3    And it's going to be too expensive for us to copy them and

4    convert anything electronically --

5               THE COURT:  Right.

6               MS. DELANEY:  -- on that, so what we had asked is

7    that they would -- we would make them available for inspection

8    and copying.

9               THE COURT:  Okay.  Well, that's what you will have to

10   do, Mr. Moore.  That's a reasonable thing.  It's the way we

11   used to do it before we had the electronic --

12              MS. DELANEY:  Old school.

13              THE COURT:  -- means.

14              THE PLAINTIFF:  I remember, I remember, Your Honor.

15              But, Your Honor, may I make a suggestion regarding

16   the documents, the boxes of documents?

17              THE COURT:  Sure.  But --

18              THE PLAINTIFF:  Okay.

19              THE COURT:  -- maybe you don't need to make it to me.

20   Maybe you need to make it to counsel.

21              THE PLAINTIFF:  Well, I think it's going to probably

22   wind up --

23              THE COURT:  Do I have to rule on something?

24              THE PLAINTIFF:  You may have to.  If you would hear

25   me out?  This is kind of important.

1          THE COURT:  Sure.  Take your time.

2          THE PLAINTIFF:  Okay.  These documents that we speak

3    of, I do actually know what it took to get these documents.  I

4    do understand it.  Part of my complaint, I have showed the EEOC

5    and Mrs. Coleman some of the documents that I got through my

6    consent decree in the National Labor Relations Board in 2005.

7          Are you with me so far?  Does that make sense?

8          THE COURT:  Yes, I'm following you.

9          THE PLAINTIFF:  Okay.  It was very difficult to get

10   those documents.

11         Now, this 25 cents a copy is what I was mentioning to

12   you when the EEOC was here.  Ms. Delaney in the hall cannot

13   afford the expense of turning these things -- which they must

14   be, because they're so voluminous, in electronic form.  That's

15   what she just said.

16         Well, Your Honor, this is not those days anymore.

17   You have laptops, you have scanners, you have telephones.  I

18   can go in there and turn those things into -- I can do a box a

19   day, and I can leave Ms. Delaney's office alone.  I have the

20   ability myself.  I have my own scanners.

21         And the reason why I mentioned the National Labor

22   Relations Board is because the Union prohibited me from copying

23   things out of the union hall, and I had to go to the NLRB to

24   use my scanner.

25         THE COURT:  Mr. Moore, you are taking time --

1          THE PLAINTIFF:  Okay.  I would like to use my

2     scanner, Your Honor, if it's okay, to copy the documents.

3          THE COURT:  Well --

4          MS. DELANEY:  We will work with Mr. Moore on that,

5     Your Honor.

6          THE COURT:  Had you asked that of her, she would have

7     said the same thing.

8          THE PLAINTIFF:  Okay.

9          THE COURT:  You don't need me for that kind of thing.

10          THE PLAINTIFF:  Okay.  Okay, Your Honor.

11          THE COURT:  So if you were --

12          THE PLAINTIFF:  Thank you so much.

13          THE COURT:  If you were a lawyer, you would

14     understand.

15          THE PLAINTIFF:  Work with her.

16          THE COURT:  Work with your opposing counsel.

17          THE PLAINTIFF:  Okay.

18          THE COURT:  Cooperate with your opposing counsel.

19          THE PLAINTIFF:  Okay.

20          THE COURT:  You don't need me to make decisions.  If

21     you need me to make a decision, you have to first confer with

22     your opposing counsel.

23          THE PLAINTIFF:  Okay, Your Honor.

24          THE COURT:  Then you have to -- if that doesn't

25     satisfactorily provide you the information --

1                THE PLAINTIFF:  Very good.

2                THE COURT:  -- then you have to prepare a motion and

3    you have to bring it before me, specifically asking for the

4    precise items that you think the other side is not giving you.

5                THE PLAINTIFF:  Very good, Your Honor.

6                THE COURT:  But I believe the other side is going to

7    give you everything that they have in their office --

8                THE PLAINTIFF:  Very good.

9                THE COURT:  -- relating to those 15 boxes.

10               THE PLAINTIFF:  Very good, Your Honor.

11               THE COURT:  Okay?  All right.

12               THE PLAINTIFF:  Yes, Your Honor.

13               THE COURT:  Now, are you going to want to file an

14   amended complaint?

15               THE PLAINTIFF:  Yes, Your Honor, because I believe --

16               THE COURT:  When are you going to be able to get to

17   do that, then?

18               THE PLAINTIFF:  By next Friday, I will have it done.

19               THE COURT:  All right.  Then what I am going to do is

20   -- you serve that motion to file an amended complaint.  Attach

21   the proposed amended complaint by -- when you say "next

22   Friday," you don't mean tomorrow.  You mean a day after -- or a

23   week after tomorrow?

24               THE PLAINTIFF:  I don't have a calendar in front of

25   me, but not this -- not tomorrow, but --

1      THE COURT:  Tomorrow is Friday.

2      THE PLAINTIFF:  Yes.

3      THE COURT:  But it is not the Friday you are speaking

4  of.

5      THE PLAINTIFF:  No, Your Honor.

6      THE COURT:  All right.

7      THE PLAINTIFF:  That would be the --

8      THE COURT:  So it's the 1st of June --

9      MS. DELANEY:  1st.

10     THE PLAINTIFF:  1st of June.  Okay.

11     THE COURT:  -- is what you are speaking of.  All

12  right.  What I am going to do, then, is set the case for

13  further status on the 12th of June.  You notice up your motion

14  for leave to file the amended complaint, you serve it by the

15  1st of June on Ms. Delaney, and then I will see you then.

16         I am going to moot all the other pending motions

17  relating to the pleadings, and those pending matters I think --

18  let me see if I can articulate them so my clerk can -- for some

19  reason, our docket entry 60 remains as a pending motion.  But I

20  believe the other motions, docket entries 72, 74, 76, and 77,

21  have all been dealt with.

22         There is another pending motion that was filed on

23  March 31, has no docket entry number, but that is also mooted.

24         And then we are going to take it forward on June

25  12th.

1          THE PLAINTIFF:  Yes, Your Honor.

2          THE COURT:  Okay?

3          MS. DELANEY:  Your Honor, are we okay in the meantime

4    to just proceed as we were?  So, you know, as I get the deps

5    scheduled, I can --

6          THE COURT:  Absolutely.  All the discovery that has

7    been previously scheduled should --

8          MS. DELANEY:  Okay.

9          THE COURT:  -- proceed forward.

10         MS. DELANEY:  Okay.

11         THE COURT:  Mr. Moore is now his own attorney, and

12   you need to treat him as his own attorney --

13         MS. DELANEY:  Sure.  Okay.

14         THE COURT:  -- at this point.

15         MS. COLEMAN:  And I will provide Mr. Moore with the

16   deposition notices.

17         THE COURT:  Yes.  That is one of the things I was

18   hoping you would do --

19         MS. COLEMAN:  Oh, yes.

20         THE COURT:  -- immediately.

21         MS. COLEMAN:  I will, today.

22         THE COURT:  Okay.  All right.

23         MS. COLEMAN:  Thank you, Your Honor.

24         THE COURT:  Thank you.

25         MS. DELANEY:  Thank you, Your Honor.

1          THE COURT:  Thank you, Ms. Coleman.

2          THE PLAINTIFF:  Thank you very much, Judge.

3          THE COURT:  Thank you, Mr. Moore.

4      (Proceedings concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4

5          I, Colleen M. Conway, do hereby certify that the

6  foregoing is a complete, true, and accurate transcript of the

7  proceedings had in the above-entitled case before the

8  HONORABLE JAMES F. HOLDERMAN, Chief Judge of said Court, at

9  Chicago, Illinois, on May 24, 2012.

10

11

12      /s/ Colleen M. Conway, CSR,RMR,CRR      01/31/13

13          Official Court Reporter            Date
            United States District Court
14          Northern District of Illinois
                 Eastern Division

15

16

17

18

19

20

21

22

23

24

25
```