IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY L. MOORE, | ) | |
| | ) | Case No. 10 CV 7376 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PIPEFITTERS ASSOCIATION LOCAL | ) | |
| UNION 597, U.A., and JAMES BUCHANAN, | ) | |
| individually and in his capacity as Business | ) | |
| Manager, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO EXCLUDE THE EXPERT REPORT AND
BAR THE TESTIMONY OF EDWARD D. ROTHMAN, PH.D.**

Defendant, Pipefitters Association Local Union 597, U.A. ("Local 597"), by and through its counsel, submits the following Memorandum of Law in Support of its Motion to Exclude the Expert Report and Bar the Expert Testimony of Edward D. Rothman, Ph.D. ("Dr. Rothman").

## I.  INTRODUCTION

Plaintiff has offered Dr. Rothman as a statistical expert to support his disparate impact claim. Dr. Rothman, however, made significant admissions during his deposition that drastically undermine the reliability of his Expert Report ("Report") and confirm that his analysis has no probative value to any issue in this case. Dr. Rothman used a "bottom line" approach, identifying simple, mathematical disparities between African Americans and all other pipefitters with respect to reported working hours. As a threshold matter, he failed to consider an easily recognizable flaw in the data he reviewed to reach his conclusions. Dr. Rothman's analysis is based on the number of hours worked by each pipefitter as assigned and reported by the contractors who employ them. Local 597 did not control or influence the assignment of those hours and any disparity identified in the hours worked cannot be attributed to Local 597.

More importantly, Dr. Rothman failed to consider and control for known and obvious non-discriminatory factors as required by controlling precedent. Other than differentiating between years, he admitted that he performed absolutely no regression analysis on the data in contrast to generally accepted and reliable methodology. As explained herein, this fundamental failure has resulted in what is recognized as "omitted variable bias," a concept that Dr. Rothman acknowledged and admitted may have influenced his conclusions.

In addition to the fatal deficiencies in his choice of data and his failure to conduct regression analysis, Dr. Rothman failed to draw any conclusions or perform any analysis with respect to the cause of the disparity identified in his Report. In fact, he admitted that he offered no opinion on the cause of any difference in hours worked between African American journeymen pipefitters and all others. Separately considered or taken together, the legal deficiencies in Dr. Rothman's process, analysis and conclusions warrant striking his Report and any related testimony.

## II. RELEVANT FACTS AND ADMISSIONS OF DR. ROTHMAN

Dr. Rothman's knowledge of the pipefitting industry and the business of Local 597 is extremely limited. The sum total of his knowledge is that a pipefitter "fit[s] pipes into other containers as to provide a conduit for materials from point A to point B." *See* **Exhibit 1**, Deposition of Edward D. Rothman ("Rothman Dep.") at 34:11-19. Dr. Rothman has absolutely no understanding of the process by which Local 597 employees are hired and assigned work. Rothman Dep. 34:20-24. He is not familiar with the concept of a union hiring hall or a referral hall and does not know the difference between the two. Rothman Dep. 10:6-25, 11:1-11. He does not know anything about the Mechanical Contractors Association ("MCA") and did not review the collective bargaining agreement between the MCA and Local 597. Rothman Dep. 34:25, 35:1-3, 65:10-14.

Dr. Rothman's lack of knowledge also extends to the numerous factors that contractors take into account when assigning hours. Rothman Dep. 37:2-19. He has no understanding of the role of a foreman, project manager, or superintendent. Rothman Dep. 41:7-25, 42:1-5. He does not know how overtime is assigned. Rothman Dep. 43:6-10. He has no understanding of the layoff process that occurs upon completion of a project. Rothman Dep. 44:13-19. He does not know whether pipefitters can refuse to take a job due to the nature of the work. Rothman Dep. 52:1-7. He does not know anything about the various levels of certification pipefitters can obtain and the qualifications necessary for certain jobs. Rothman Dep. 54:15-25, 55:1-10. In addition to his general lack of understanding of the industry and this specific union, Dr. Rothman repeatedly admitted that he did not attempt to control for any of these factors, all of which directly impact the assignment of hours. Rothman Dep. 46:8-25, 47:1-20, 60:13-21, 61:20-23, 64:13-15.

Dr. Rothman also refused to draw any conclusions or perform any analysis with respect to the cause of the "unevenness" identified in his report. Rothman Dep. 13:21-23, 20:1-4, 57:16-25, 58:1-10. Aside from observing that there were different results in different years, Dr. Rothman testified that it was for the court to decide the cause and effect relationship between the hours worked by African American pipefitters and any alleged discrimination. Rothman Dep. 57:25, 58:1-10. This admission was repeated multiple times as Dr. Rothman emphasized that he was "simply asked to do some calculations." Rothman Dep. 11:25, 12:1-5. When pressed for a reason why he did not analyze causation, Dr. Rothman attempted to justify his failures by suggesting that "the root cause of something is never known," "we don't know the cause of anything," and that "causation is not the issue." Rothman Dep. 46:13-25, 47:1-10.

3

In order for Dr. Rothman's calculations to be probative of any issue in this case, his statistical analysis must meet the minimum standards, and more importantly, establish a causal link between a practice of Local 597 and the reported disparity. His Report fails on all counts.

## LEGAL BACKGROUND

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set the standard for admissibility of expert testimony. Applying Federal Rule of Evidence 702, the Court reaffirmed the district court's vital "gatekeeping" role and elaborated on the standard that courts should follow in discharging that role. *See Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1142 (7th Cir. 1998)*; see also Zenith Elecs. Corp.*, No. 01 CV 4366, 2003 WL 21506808 at *1 (N.D. Ill. July 27, 2003) (explaining that *Daubert* requires trial courts to "perform a gate keeping function by examining the expert's methodology"). The purpose of the court's gatekeeping function is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Courts in the Seventh Circuit interpreting *Daubert* have endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). First, the court must determine whether the expert's testimony is reliable. *Id.*; *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999). An expert must not only have a reliable methodology, but his opinion must be "based upon sufficient facts or data," and the methodology must be applied "reliably to the facts of the case." *People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537-38 (7th Cir. 1997). If the testimony is sufficiently reliable, the court must then consider the testimony's relevance and

whether it will assist the trier of fact in understanding the evidence or a fact at issue. *Id.*; *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996).

### A. DR. ROTHMAN'S ANALYSIS AND METHODOLOGY ARE NEITHER RELIABLE NOR COMPLIANT WITH THE APPLICABLE LEGAL STANDARDS.

The analysis supporting Dr. Rothman's conclusions is flawed and contrary to accepted methodologies for statistical analysis. Dr. Rothman testified that he was asked "to prepare a table describing hours worked by year and race." Rothman Dep. 11:17-23; *see also* Dr. Rothman's Report attached as **Exhibit 2**. In doing so, he simply calculated the hours worked by each employee and "aggregat[ed] those numbers across race per year." Rothman Dep. 12:6-14. He then calculated the standard deviations of those numbers to determine whether there were significant differences between the average hours worked by African American pipefitters as opposed to Caucasian pipefitters. Rothman Dep. 12:6-14. Dr. Rothman admitted:

- He looked at no factors that might explain disparity between the races.

- He failed to control for, or even acknowledge, obvious factors such as the distinction between voluntary and involuntary separations, the hierarchy of job positions, the voluntary nature of overtime, the varying levels of certification, the locations of projects, the impact of injuries on hours worked, the availability of public transportation, or the process of self-selection.

- He made no comparison to the availability of pipefitters in the relevant job market.

- He offered no opinions with respect to what caused the disparity or whether it was the result of discrimination.

- He left it up to others to determine what caused the disparity and refused to establish any causal connection between the disparity and discrimination.

Statistical analysis sufficient to withstand *Daubert* scrutiny must seek to eliminate chance and demonstrate that race is the likely cause of an existing disparity. This typically is accomplished by controlling for known non-discriminatory factors and eliminating them from

5

the statistical analysis. A competent, reliable analysis must, at a minimum, consider the major variables that might explain the disparity. *People Who Care*, 111 F.3d at 537-38; *see also Mozee v. Am. Comm. Marine Serv. Co.*, 940 F.2d 1036, 1046 (7th Cir. 1991) (holding that statistical analysis must take into account the major variables one might expect to cause a statistical disparity and must eliminate the most common non-discriminatory reasons); *Council 31 Am. Fed'n of State, Cnty. & Mun. Emps.*, 978 F.2d 373, 378 (7th Cir. 1992) ("[O]bvious or common non-discriminatory reasons for the apparent disparities must be taken into account.").

Courts in the Seventh Circuit have held that a failure to engage in regression analysis is a flaw that renders an expert report unreliable, unpersuasive, and irrelevant. *Smith v. Pick 'N Save*, No. 95-3921, 1996 WL 694434, at *4 (7th Cir. Nov. 25, 1996) (holding that the expert's statistical analysis was flawed and unpersuasive, in part, because he failed to distinguish between voluntary and involuntary terminations and failed to consider the number of reasons for African American terminations); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1044 (7th Cir. 1998) (noting that plaintiff's statistical evidence was of limited value because it failed to account for variables other than religion); *E.E.O.C. Consol. Servs. Syst.*, 777 F. Supp. 599, 604 (N.D. Ill. 1991) (finding that because the expert report failed to properly consider a major variable potentially responsible for the statistical disparity—namely, whether members of the relevant labor pool were actually *interested* in the position available—the statistics were unreliable); *O'Keefe v. Verian*, No. 95 C 4281, 1998 WL 417498 at *9 (N.D. Ill. July 23, 1998) (finding that an expert's report was not probative on the issue of age discrimination because, among other things, it failed to take into consideration other factors that might affect the analysis).

In this case, not only did Dr. Rothman fail to consider the most obvious non-discriminatory factors, he controlled for no factors whatsoever. Rothman Dep. 46:8-25, 47:1-20,

60:13-21, 61:20-23, 64:13-15. He did not consider the location of various projects relative to the availability of African American workers. Rothman Dep. 48:5-12. He did not consider project deadlines. Rothman Dep. 48:13-15. He did not consider the breakdown between regular hours and overtime hours. Rothman Dep. 48:16-18. He did not consider whether there was any variance between MCA contractors in assigning work. Rothman Dep. 48:19-23. He did not consider the percentage of projects in Cook County as opposed to other counties. Rothman Dep. 50:24-25, 51:1-3. He did not consider pipefitters self-selecting out of working in certain jurisdictions. Rothman Dep. 51:8-25, 52:1-16. He did not consider the availability of public transportation. Rothman Dep. 54:3-6. He did not consider the skill set or levels of certification of the pipefitters who were included in the analysis. Rothman Dep. 54:13-25, 55:1-10. He did not consider the impact of injuries on hours. Rothman Dep. 59:14-16. He did not consider whether any pipefitters were terminated "for cause." Rothman Dep. 59:17-25, 60:1-2. He did not consider the voluntariness of overtime. Rothman Dep. 63:3-13.

The Seventh Circuit has barred the use of an expert report where that expert, like Dr. Rothman, failed to take into consideration any non-discriminatory factors. *See, e.g.*, *People Who Care*, 111 F.3d at 537-38 ("[A] statistical study that fails to correct for salient explanatory variables . . . has no value as causal explanation and is therefore inadmissible in federal court."). In *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940-42 (7th Cir. 1997), the Seventh Circuit held that a proposed expert's statistical analysis in an age discrimination case was inadmissible because he failed to consider variables other than age and ignored the differences between the jobs worked by various employees. Specifically, the court held that "the expert's failure to make any adjustment for variables bearing on the decision whether to discharge or retain a person on the list other than age—his equating a simple statistical correlation to a causal relation—

7

indicates a failure to exercise the degree of care that a statistician would use in his scientific work, outside the context of litigation." *Id.* Similarly, here, Dr. Rothman failed to exercise the requisite degree of care by refusing to consider any nondiscriminatory factors affecting the assignment of hours.

Courts in other jurisdictions have agreed with the Seventh Circuit's reasoning and refused to admit expert reports that fail to consider known factors. *See, e.g.*, *Fuller v. Instinet, Inc.,* No. 99 Civ. 11453, 2001 WL 34893685, at *4 (S.D.N.Y. Nov. 28, 2001) (citing *Sheehan* and barring the use of a report that failed to take into account factors that may have explained the racial disparity and failed to demonstrate that race was likely the cause of the disparity); *Ross v. Nikko Sec.*, 133 F.R.D. 96, 97 (S.D.N.Y. 1990) (rejecting plaintiffs' statistical evidence where the statistics "merely compared 'the relative number of men and women in various job titles' and failed to offer 'the relevant comparisons of similarly situated female and male employees'"); *Smith v. Xerox Corp.*, 196 F.3d 358, 370-71 (2d Cir. 1999) (holding that the plaintiff's statistical analysis failed to support an inference of discriminatory treatment because it did not account for any causes other than the fact that older workers were more likely to be terminated); *Raskin v. Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997) (holding that the expert report was inadmissible in part because it "assume[d] that any anomalies in the . . . data must be caused by age discrimination, and [made] no attempt to account for other possible causes").

In addition to the many variables that Dr. Rothman failed to consider, he also failed to identify the relevant labor market, which is a "crucial" factor in employment discrimination cases. *Janes v. Chi. Bd. of Educ.*, No. 00 C 6128, 2002 WL 31557619, at *5 (N.D. Ill. Nov. 18, 2002). In particular, "properly identifying the relevant labor market is the key ingredient in proving Title VII discrimination through the use of statistics." *Id.* (citing *E.E.O.C. v. Chi.*

*Miniature Lamp Works*, 947 F.2d 292, 302 (7th Cir. 2991)); *see also Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000) ("A valid statistical analysis must encompass the relevant labor market."); *E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876-77 (7th Cir. 1994) ("Determining the relevant labor market is an essential step in determining whether there are any statistically significant deviations between the market and the employer's hiring patterns."); *Soria v. Ozinga Bros., Inc.*, 704 F.2d 990, 999 (7th Cir. 1983) (finding that because the expert never defined the relevant labor market, his evidence was so incomplete that it could not have assisted in the establishment of a discriminatory motive). Dr. Rothman admitted that he did not review any national or local data on the hours worked by African American pipefitters compared to Caucasian pipefitters. Rothman Dep. 53:1-4. And he did not consider any labor market rates on a national or local basis. Rothman Dep. 53:22-25, 54:1-2. These omissions are in direct conflict with controlling precedent.

Aside from established legal principles, there is also a valid scientific basis for barring and excluding Dr. Rothman's Report. Local 597 hired its own expert, Dr. David S. Evans,[1] to evaluate whether the statistical evidence presented in Dr. Rothman's Report was capable, from an economic and scientific standpoint, of demonstrating that Local 597 engaged in practices that adversely impacted African Americans. *See* Export Report of Dr. David S. Evans attached as **Exhibit 3**. Dr. Evans explained that failing to control for relevant factors, as Dr. Rothman did, results in "omitted variable bias," a generally accepted scientific principle that has been extensively analyzed in professional literature. Ex. B at p. 9. Specifically, omitted variable bias

---

[1] Dr. Evans has a Ph.D. in economics from the University of Chicago. He is the Chairman of Global Economics Group, a lecturer at the University of Chicago Law School, and a visiting professor at the University College London. He has authored more than 150 professional articles and is the author or editor of seven books. He is an expert in labor economics, a field that includes the study of employment and determination of wages in society. He specialized in this area for his Ph.D., has written professionally on the topic, and has been qualified as an expert in this area in federal court.

130735389v1 0917692

provides that a conclusion regarding a statistical relationship is biased if the model relied upon fails to control for factors correlated with the variable of interest, in this case race. Ex. B at p. 9. In other words, failing to control for relevant factors can mislead those interpreting the results about the actual differences that may or may not exist. Ex. B. at p. 9. Dr. Rothman acknowledged this principle and conceded that his conclusions could, in fact, suffer from omitted variable bias. Ex. B. at p. 9; Rothman Dep. 61:15-25, 62:1-13.

Had Dr. Rothman accounted for the many well-known factors affecting the assignment of hours, he would have observed that African Americans were referred to contractors outside of the Local 597 referral hall at rate greater than their average representation on the out-of-work list. Ex. B. at p. 14. Notably, African American pipefitters make up 6.9 percent of the out-of-work list; yet, 9.7 percent of calls to members for job referrals were to African Americans. Ex. B. at p. 14. He also would have observed that African Americans were more likely to refuse a job to which they were referred. Ex. B. at p. 15.

In light of these repeated failures, Dr. Rothman's analysis falls well below the minimum standards for admissibility. This Court must now determine whether expert analysis that controls for *nothing* can survive *Daubert* scrutiny. The Seventh Circuit has clearly answered this question in the negative, upholding the exclusion of an expert's report on this very basis.

    **B.    DR. ROTHMAN FAILED TO ANALYZE CAUSATION, A PREREQUISITE TO RELEVANT AND ADMISSIBLE STATISTICAL ANALYSIS IN DISPARATE IMPACT CASES.**

In *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977 (1988), the United States Supreme Court expressly held that, as part of the *prima facie* case, the plaintiff is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities. *See also Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) ("[I]t is not

10
130735389v1 0917692

enough to simply allege that there is a disparate impact on workers . . . "). However, beyond just identifying a statistical disparity, a plaintiff must also prove that the observed disparity was *caused* by the factor at issue through an offer of "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of [individuals] because of their membership in a protected group." *Watson*, 487 U.S. at 994; *Cox v. City of Chi.*, 868 F.2d 217, 223 (7th Cir. 1989) ("A plaintiff's only means of demonstrating a *prima facie* case is to identify the challenged criteria and then prove causation."). The reasoning behind this requirement is that "it is completely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance." *Watson*, 487 U.S. at 992.

Dr. Rothman repeatedly admitted that he did not draw any conclusions or perform any analysis with respect to the cause of the "unevenness" identified in his report. Rothman Dep. 13:21-23, 20:1-4, 57:16-25, 58:1-10. His "bottom line" conclusion that there is a disparity between the number of hours worked by African American pipefitters as opposed to Caucasian pipefitters, without any further analysis, cannot assist the trier of fact in deciding the ultimate question: whether Plaintiff was discriminated against on the basis of his race. *See Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999) (explaining that where a proffered expert offers nothing more than a "bottom line" conclusion, he does not assist the trier of fact); *Daubert*, 509 U.S. at 591 (holding that expert testimony that does not relate to any issue in the case is not relevant and, therefore, does not assist the trier of fact). As Dr. Rothman's Report ignores the critical requirements of causation, it has no probative value to any issue in this case, and is not admissible under the Federal Rules of Evidence.

130735389v1 0917692

### C. THE DISPARITY IDENTIFIED IN DR. ROTHMAN'S REPORT CANNOT BE ATTRIBUTED TO LOCAL 597 BECAUSE LOCAL 597 DID NOT CONTROL THE ASSIGNMENT OF HOURS.

In addition to failing to consider or control for any nondiscriminatory factors and failing to express an opinion on causation, Dr. Rothman failed to acknowledge an obvious, known factor that directly impacts the reliability and relevance of his Report. More specifically, Dr. Rothman failed to analyze or evaluate any procedure or practice for which Local 597 could be held responsible under Title VII. For example, Dr. Rothman did not review the operation the union hiring hall or referral hall or the policies and procedures contained within the applicable collective bargaining agreement and the impact of those procedures on hours assigned. Rothman Dep. 10:24-25, 11:1, 65:10-17. On the contrary, to conduct his analysis, Dr. Rothman relied on the number of hours worked by each pipefitter as reported by the MCA contractors to the Local 597 Welfare Fund. Dr. Rothman admitted that these hours were assigned and controlled by the contractors who hire the pipefitters, not Local 597. Rothman Dep. 38:2-9. Yet, Plaintiff attempts to use Dr. Rothman's analysis of these hours as evidence of union wrongdoing. If Local 597 had no control over the data that led to the disparity, Local 597 could not have caused the disparity. In turn, the only possible inference that can be drawn from Dr. Rothman's Report is that the contractors disproportionately assigned work (for any number of reasons), an inference that is irrelevant to Plaintiff's claims against Local 597.

Local 597's expert verified that Dr. Rothman's failure to consider the source and impact of his data further invalidates his analysis. He concluded that Dr. Rothman's Report, from a statistical and economic perspective, is irrelevant in determining whether any action, policy, or procedure of Local 697 was responsible for any difference in hours worked across race. Ex. B. at p. 4. This, alone, renders his Report inadmissible.

WHEREFORE, Defendant, Pipefitters Association Local Union 597, U.A., respectfully requests that this Honorable Court exclude the Report of Edward D. Rothman, Ph.D and bar him from testifying on any topic contained in the Report.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Tom H. Luetkemeyer
Tom H. Luetkemeyer

Tom H. Luetkemeyer
Aimee E. Delaney
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
tluetkemeyer@hinshawlaw.com
adelaney@hinshawlaw.com