IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY L. MOORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 10 CV 7376 ) ) |
| PIPEFITTERS ASSOCIATION LOCAL UNION 597, U.A., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Defendant submits this Memorandum of Law in Support of Its Motion for Summary Judgment:

## I. INTRODUCTION

Anthony Moore ("Plaintiff"), an African-American member of Pipefitters Association Local Union 597 ("Local 597"), asserts claims of race discrimination, retaliation and failure to represent against his union. Plaintiff's case centers on an out of work list and the operation of a Hiring Hall, later converted to a Referral Hall. Plaintiff specifically claims Local 597 failed to recall and/or refer Plaintiff for employment through both the Hiring Hall and Referral Hall because of his race, referred non-Black members out from the Hiring or Referral Hall who were lower on an out of work list than Plaintiff, and assigns fault to Local 597 because no signatory contractor has hired him directly. Having concluded fact and expert discovery, Defendant moves for summary judgment pursuant to F.R.C.P. 56. There are no disputes of material fact, and as this memorandum demonstrates, Defendant is entitled to summary judgment on all claims.

## II. STATEMENT OF FACTS

**Hiring Hall.** Local 597 had a Hiring Hall in place from 1994 until January 1, 2006, which was made part of the area-wide agreement with the Mechanical Contractors Association.

(Rule 56.1 Statement of Undisputed Facts, at ¶ 2)[1]. Under the Hiring Hall rules, an out of work list ("OWL") was created for union members from which members with the requested skills would be referred to contractors in the order in which they appeared on the list. (¶ 3). Those out of work the longest appeared at the top of the list. (¶ 3).

The specific process was as follows: members completed a personal profile registration form, in which the member identified the member's skills, certifications, geographical preferences or restrictions, contact information, and other relevant information, which was entered into the computer (¶ 4, 7); a contractor in need of personnel would submit an employer referral request form specifying the job available, experience, skills and other qualifications required by the employer (¶ 6); contractor requests would be entered into the computer and the computer would identify and select the highest person on the OWL whose profile matched the qualifications necessary to fill the request. (¶ 7). Once the computer identified a pipefitter from the OWL, the Hiring Hall would call the member at the number on file, and if no response or the job was refused, would call the next member in line on the OWL identified by computer. (¶ 9).

Plaintiff has no knowledge as to how the computer selects individuals from the OWL and he presents no evidence that the computer process was manipulated. (¶ 8). Plaintiff has no evidence that business agents exercised any discretion in selecting pipefitters to call from the OWL. (¶ 10). Plaintiff has no support for his statement that he was excluded from direct hires or recall exceptions under the Hiring Hall because of his race. (¶ 63). Contractors had the sole and exclusive responsibility for hiring, firing, and accepting pipefitters referred to the employer from the Hiring Hall. (¶ 5).

---

[1] All references to Defendant's Rule 56 Statement of Undisputed Facts will be cited as (¶ __).

The Hiring Hall rules had exceptions for which direct hires by contractors could be made without regard to a pipefitter's position on the OWL, including a "recall," which is the direct hire of a pipefitter who had worked for the contractor within the past year. (¶ 16). Local 597 had no role in direct hires made by the contractors; rather, the contractors had the discretion to hire pipefitters falling within one of the permitted exceptions. (¶ 17). A superintendent or foreman, both agents and employees of the contractor, was responsible for recalling Local 597 members for a contractor under the Hiring Hall exceptions. (¶ 18). Plaintiff has no evidence that the individuals hired by contractors under the recall exception did not actually satisfy the requirements for the exception. (¶ 70).

Any disputes concerning the operation of the Hiring Hall were to be filed in writing with Local 597 within seven days of an alleged violation, which would trigger an investigation by Local 597 and possibly referral of the matter to a Hiring Hall committee. (¶ 24). The Hiring Hall Rules prohibited any discrimination against a member on be basis of race, color, national origin, religion or gender. (¶ 25). Plaintiff never filed a dispute or grievance. (¶ 77).

**Referral Hall.** Effective January 1, 2006, the Hiring Hall was converted to a Referral Hall, which requires 25% of all contractor hires in any calendar quarter to be made through the Referral Hall from the OWL. (¶ 26). The remaining 75% of hires by contractors in the calendar quarter can be made directly by the contractor, without use of the hall. (¶ 27). An OWL still is maintained by computer and the manner in which members register for the OWL and are selected by the computer remains unchanged. (¶ 28). The manner in which employer referral requests are received and entered by the Referral Hall also is unchanged from the Hiring Hall procedures. (¶ 30).

The Referral Hall Rules do not permit any "direct hire" or "exception" hires with respect to the 25% of contractor hires made through this system. (¶ 32). Contractors failing to comply with the 25% Referral Hall hiring requirement are subject to penalties, including a written warning, probation and monetary fines. (¶ 33). The contractor has the sole and exclusive responsibility for hiring and firing pipefitters referred to the contractor. (¶ 34). Local 597 plays no role in determining what contractor jobs or hires will be submitted through the Referral Hall. (¶ 38). As with the Hiring Hall, the Referral Hall Rules prohibit any discrimination against a member on be basis of any protected category proscribed by law. (¶ 35).

From 2006 to the present, under the Referral Hall Rules, Plaintiff cannot identify any specific action Local 597 has taken against Plaintiff on the basis of his race. (¶ 64). Local 597 does not schedule or set the hours worked by a member and does not control the nature or amount of work assigned. (¶ 39). Local 597 does not supervise, discipline or discharge a member while employed on a job site. (¶ 40).

**Member Obligations.** To be eligible to receive referrals from the OWL under both the Hiring Hall and Referral Hall systems, a member had to be current in his/her dues. (¶ 13). A failure to pay dues initially results in the member being placed on "hold" and ultimately being removed from the list entirely if the delinquency was not paid. (¶ 14). Plaintiff acknowledged that the dues payment rule was and is applied to all members, regardless of race. (¶ 15). Under both systems, members who were unreachable on three or more occasions also are placed on hold and are not eligible to receive referrals from the OWL list until the member updates his/her contact information. (¶ 11). This rule is applied to all members, regardless of race. (¶ 12).

On May 12, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, asserting that he was not recalled or referred out for work by Local

4
130745685v1 0917692

597 because of his race and/or in retaliation for his protected activity. (Dkt. No. 86, at ¶ 5; Exhibit to the First Amended Complaint, Dkt. No. 19).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once established, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). A mere "scintilla of evidence" is insufficient and plaintiff "must show that there is evidence upon which a jury reasonably could find for [her]. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). While a court must accept the nonmoving party's evidence as true, it is not to draw "inferences that are supported only by speculation and conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). As such, a plaintiff cannot merely "raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing that there is a genuine issue for trial. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Failure to do so entitles Defendant to judgment as a matter of law.

### IV. LEGAL ARGUMENT

#### A. Plaintiff Fails To Sustain a Disparate Impact Claim

In order to satisfy his *prima facie* burden for a disparate-impact claim, Plaintiff must: 1) identify a facially neutral employment practice of the union which causes a disparate impact on the basis of race; and 2) demonstrate causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused [the disparity]" because of their membership in the protected group." *Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 994, 108

5

S.Ct. 2777, 101 L.Ed.2d 827 (1988); see also, *Young-Smith v. Bayer Health Care LLC*, 788 F. Supp. 2d 792, 808 (N.D. Ind. 2011), citing, *Price v. City of Chi.,* 251 F.3d 656, 659 (7th Cir. 2001). In short, Plaintiff must isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation. *Watson*, 487 U.S. at 994-95, 108 S.Ct. 2777, 2788-89; *Ferrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005).

### 1. Failure to Identify a Specific Employment Practice

In order to satisfy the first element of his burden, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Puffer v. Allstate Ins.*, 675 F.3d 709, 717 (7th Cir. 2012), citing, *Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S.Ct. 1536 (2005). Failure to identify the specific practice could lead to employers being held liable for "the myriad of innocent causes that may lead to statistical imbalances." *Watson*, 487 U.S. at 994, 108 S.Ct. 2777. In the present case, Plaintiff asserts nothing more than the operation of the Hiring Hall and Referral Hall itself has had a disparate impact on African-American members. His complaint simply asserts that "[a]t present, the 'rules of the Hiring Hall' and its actual operation are suspect at best. The disparate impact on me and other Afro-American journeymen is profound." (Dkt. No. 122, ¶12). The Fourth Amended Complaint continues, "[t]he system known as the 'telefitter' system is alive and well since January 1, 2006. The current CBA (75%/25%) is the telefitter system renamed. There is no defense regarding the disparate impact this system has caused me and other Afro-Americans." (Dkt. No. 122, ¶13). Plaintiff has not identified a specific aspect, rule or practice under either the Hiring Hall or Referral Hall which he claims leads to the claimed disparity and Local 597 submits that this failure is fatal to Plaintiff's disparate impact claim. Only where Plaintiff can

6

demonstrate a process is incapable of being broken out can he look to a process as a whole to satisfy this requirement of a disparate impact claim. Civil Rights Act of 1991, Pub. L. No. 102-166, § 105(B)(i), 105 Stat. 1071 (codified as amended at 42 U.S.C. 2000e-2 (1964)).. Plaintiff has done neither and this flaw is fatal to his impact claim.

### 2. Failure to Present Evidence of Causation

Even were we to accept that Plaintiff has overcome the first of his two *prima facie* obligations, Plaintiff fails to present the necessary statistical evidence establishing causation. Even assuming Plaintiff's facially neutral practice is the operation of the Halls generally, the allowance of exceptions under the Hiring Hall, the application of rules such as payment of dues to be eligible for referrals or the change to the Referral Hall (none of which has been specified by Plaintiff's disparate impact claim), he has wholly failed to put forth any statistical evidence which demonstrates that any of these neutral policies/practices, alone or considered together, is the cause of an alleged racial disparity in the treatment of Local 597 members with respect to the operation of the Halls.

Plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the practice in question *has caused* a disparity in the nature or extent of referrals because of a member's race. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996)(rejecting impact claim that word-of-mouth hiring is discriminatory, stating that "[i]t is not enough for a plaintiff to demonstrate that an employment practice could theoretically be used to discriminate.."); *Watkins v. City of Chi.,* 73 F. Supp. 2d 944, 949 (N.D. Ill. 1999)(absence of statistical showing that Black applicants were excluded or any observed disparities in actual hire process fatal to impact claim premised on hiring process).

7

Plaintiff admits that there is no statistical evidence demonstrating that the use of the Hiring Hall exceptions, i.e. a recall, emergency hire, or supervisor hire, created a disparate impact on Plaintiff or other African-Americans. (¶ 41). The only statistical evidence offered by Plaintiff is that of Dr. Edward Rothman, who was retained by Plaintiff to examine the number of hours worked by union members from 2004 through 2012 by race of the member. (¶ 43). To do so, Rothman analyzed member work hours reported by contractors into the Health and Welfare fund. (¶ 44). Local 597 does not control the work hours of its members. (¶ 39) and work hours are exclusively within the control of the signatory contractor. Dr. Rothman did not analyze *any data* pertaining to the actual operation of the hiring or Referral Halls.

Critically, he did not perform any analysis or offer any opinion on the cause of the "unevenness" that he observed in work hours. (¶ 46). Instead, Dr. Rothman simply concludes that "Black pipefitters had statistically significantly fewer work hours every year between 2004 and 2011 than White pipefitters." (¶ 43). With the filing of this Motion, Defendant also moves to strike the report and opinions of Dr. Rothman for the significant failings of his analysis. (Dkt. No. 168-169). Defendant adopts and incorporates that motion as further grounds to demonstrate that Plaintiff has not met his *prima facie* burden of establishing causation as is required to pursue a disparate impact claim.

By comparison, Local 597 retained Dr. David Evans to review and opine on the Referral Hall and Hiring Hall data produced in the litigation. Beginning with the earliest date that electronic data was available documenting a daily "snapshot" of the OWL (February 14, 2006), African-Americans were referred to contractors from the Referral Hall at a rate greater than their average representation on the OWL, receiving 9.7% of the calls to members for job referrals while comprising 6.7% of the OWL. This analysis confirms that the only portion of the

8

employment process in which Local 597 is arguably involved, the referral of a member from the hall, has not been operated in such a manner as to cause a discriminatory impact on African Americans.

The utter absence of statistics offered by Plaintiff relating to the operation of the halls themselves in support of his disparate impact claim is a sufficient basis on which to enter judgment for Local 597. However, given the statistical analysis performed by Dr. Evans on the actual Hiring Hall and Referral Hall data, it is also clear that no disparate impact exists from any claimed practice or policy of Local 597. As such, Local 597 asks this Court to enter summary judgment in its favor as to the disparate impact claim plead in Count III.

**B.     Plaintiff Fails to Sustain a Disparate Treatment Claim**

Plaintiff asserts intentional discrimination claims under both Title VII and § 1981, alleging that Local 597 intentionally excluded him from or denied him referrals from the hall because of his race. (Dkt. No. 122, at ¶ 17, 18, 28). As to the § 1981 claim, Plaintiff is subject to a two year statute of limitations as his claim pertains only to the making/enforcing of contracts and does not rely on claims recognized with the amendments made under the Civil Rights Act of 1991. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836 (2004)(federal four year catch all limitations period does not apply to § 1981 claims which do not rely on the 1991 Amendments). Plaintiff's § 1981 claim, therefore, is limited to any alleged claims of intentional discrimination by Local 597 occurring on or after March 7, 2010, the two year period prior to the filing of the Second Amended Complaint.[2] Plaintiff admits that under the operation of the

---

[2] Plaintiff did not plead a § 1981 claim in his First Amended Complaint, filed on February 8, 2011 (Dkt. No. 11). Plaintiff filed a Second Amended Complaint on March 7, 2012 (Dkt. No. 57) which replead a § 1981 claim, more than one year after being dropped from his pleadings.

9

Referral Hall, he cannot identify any specific, intentional action that Local 597 has taken that discriminated against him on the basis of his race. (¶ 64).

Even assuming the four year limitations period found in 28 U.S.C. § 1658 applied, Plaintiff fails to present any evidence of intentional discrimination which occurred in that extended period (2008 to the present). The Hiring Hall predates that time period, as does the change over to the Referral Hall, which occurred in 2006. Plaintiff's claim again falls to his general allegation that he has been refused or denied referrals because of his race, a claim for which no admissible evidence has been presented.

Plaintiff also asserts an intentional discrimination claim under Title VII (Count III).[3] A union is exposed to potential liability under a separate provision of Title VII, 42 U.S.C. § 2000e-2(c), which addresses the union's role as the employee's agent and when performing union functions.

> [If a union] discriminates in the performance of its agency function, it violates Title VII, but not otherwise. Thus a union that refuses to accept blacks as members, or refuses to press their grievances, is guilty of discrimination. But if it merely fails to effectuate changes in the workplace…the union is not guilty of discrimination."
> 334 F.3d at 659.

This provision is distinct from the provision governing employers. When a discrimination claim is addressed to the terms and conditions of employment, only the employer is liable as Title VII imposes the duty of providing nondiscriminatory terms and conditions of employment on employers only. 42 U.S.C. § 2000e-2(a); see, *EEOC v. Pipefitters Local 597*, 334 F.3d 656 (7th Cir. 2003)(unions have no affirmative duty to prevent unlawful discrimination in the workplace); see also, *Johnson v. Int'l Longshoreman's Ass'n, Local 815 AFL-CIO*, 520

---

[3] Typically, Title VII claims and § 1981 are analyzed in the same manner. *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007).

Fed. Appx. 452, 453-54 (7th Cir. 2013) (no evidence that union exercised control over assignment of job tasks after fulfilling referral requests).

Plaintiff has presented no evidence of any discrimination by Local 597 in the performance of its agency function, including the operation of the Hiring and Referral Halls. Plaintiff admits he does not know how the computer system for the Halls work(ed) and has presented no evidence that this system operated in a discriminatory manner. (¶ 8). Plaintiff admits he has no knowledge that business agents exercised any discretion in selecting pipefitters from the OWL or otherwise deviated from this process. (¶ 10). Plaintiff admits the rules pertaining to dues payments, short jobs, and missed contacts were applied equally to all members regardless of race. (¶¶ 12, 15, 23). Plaintiff admits he has no support for his allegation that he was excluded from direct hires or other Hiring Hall exceptions because of his race. (¶ 67).

Plaintiff's claims instead implicate decisions or actions of signatory contractors, actions for which Local 597 cannot be liable. For example, Plaintiff's intentional discrimination claims assert that that he had not been "recalled" by a contractor or directly hired by a contractor as permitted under the exceptions in Hiring Hall because of his race. However, setting aside the accuracy of these allegations, they do not implicate the union's agency function and cannot serve as a basis for liability as to Local 597. *Pipefitters Local 597*, 334 F.3d at 659; *Johnson*, 520 Fed. Appx. at 453-54.

### C. Plaintiff's Retaliation Claim Fails As a Matter of Law

Plaintiff's retaliation claim is premised in large part on the same alleged conduct of Local 597 that serves as the basis for his discrimination claims, and as such, his retaliation claim suffers the same fate under what the Supreme Court recently confirmed to be a stricter standard. *Univ. of Tx. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-33, __ U.S. __ (June 24,

130745685v1 0917692

2013), confirmed that for Plaintiff to prevail in a Title VII retaliation claim, he must meet the stricter "but for" standard of causation, not the "lessened causation test" for discrimination claims. This requires proof that the alleged adverse action would not have occurred but for Plaintiff engaging in protected activity. *Id.* Plaintiff asserts that in retaliation for filing his charge of discrimination or this litigation, Local 597 has "retaliated by further reducing job referrals to him." (Dkt. No. 122, ¶ 25). However, there is no evidence in the record to support this claim. Plaintiff cannot identify a job which he believes he was denied for any reason, cannot identify a non-Black member who he believes was farther down on the OWL and was referred for a job instead of Plaintiff, and has no evidence Local 597 was involved in any layoff or termination. (¶¶ 69, 74). His failure to prove such facts in the discrimination context defeats his retaliation claim as well. There is no evidence that because of filing his charge of discrimination or other protected activity, Plaintiff suffered reduced referrals from either Hall or was otherwise impacted in any manner. There is no evidence that satisfies the higher evidentiary burden.

### D. Breach of the Duty of Fair Representation

#### 1. Plaintiff's claims are barred by the six month statute of limitations

Breach of the duty of fair representation claims are governed by a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters, et al.,* 462 U.S. 151, 169-172, 103 S.Ct. 2281, 2293-94 (1983)(six-month limitations period in §10(b) of the National Labor Relations Act is the appropriate limitations period for claims by union members against their union); see also, *Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999). That six month period begins to run either from the time a final decision on a plaintiff's grievance has been made or from the time he or she discovers, or should have discovered, the acts constituting the alleged violation. *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983)(complaint for

12

breach of the duty of fair representation dismissed as untimely under the six month statute of limitations), *cert. denied,* 496 U.S. 1070, 104 S.Ct. 976 (1984).

Plaintiff's claim does not assert a new claim that the union failed to properly process or pursue a grievance. Rather, Plaintiff claims that Local 597 intentionally discriminated against him on the basis of his race and retaliated against him for engaging in protected activity by failing to recall, hire or refer him out for jobs under Local 597's Referral Hall. These claims are the very claims which form the basis of Plaintiff's charge of discrimination, filed in 2004. (Exhibit to Dkt. No. 19). Plaintiff then amended his EEOC charge in July of 2004 to specifically assert an added element titled, "Lack of Representation." (Exhibit to Dkt. No. 19). Plaintiff's claim is that from approximately 2003, Local 597 has intentionally and affirmatively discriminated and retaliated against him.

Notwithstanding any dispute as to the substance of Plaintiff's allegations, there is no doubt Plaintiff knew of the acts constituting the alleged violation no later than the date he amended his Charge of Discrimination in July of 2004. Plaintiff did not file his duty of fair representation claim until March 7, 2012, which he first asserted in Plaintiff's Second Amended Complaint. (Dkt. No. 56). Plaintiff has not alleged any new acts and has presented no evidence of any failure on the part of Local 597 within the six month period relevant to his Second Amended Complaint. Any claim now against Local 597 for a breach of the duty of fair representation based on these same allegations of discrimination and retaliation, which Count IV attempts to do, clearly are outside the six-month limitations period and summary judgment should be granted.

130745685v1 0917692

## 2. Duty of Fair Representation Claim Fails on Its Merits

Notwithstanding the procedural bar imposed by the statute of limitations, Plaintiff's claim for breach of the duty of fair representation fails substantively on the merits of the claim. A union breaches its duty of fair representation when its actions are arbitrary, discriminatory or in bad faith. *See, Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916-17 (1967); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). To defeat a motion for summary judgment, a plaintiff must offer evidence supporting at least one of these elements. *See, Filippo v. N. Ind. Pub. Serv. Corp., Inc,* 141 F.3d 744 (7th Cir. 1998).

A union's actions are arbitrary "only if the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Neal,* 349 F.3d at 369, citing, *Filippo,* 141 F.3d at 749. The Seventh Circuit confirmed that this is an extremely deferential standard and courts are precluded from "substitut[ing] their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Neal,* 349 F.3d at 369, citing, *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1302 (7th Cir. 1992). Further, for a plaintiff to demonstrate his/her union acted in a discriminatory manner or in bad faith, the plaintiff must present proof that the union acted or failed to act due to an improper motive; mere negligence is not sufficient to establish a breach. *Id.*

In the present case, Plaintiff never filed a grievance with Local 597 raising any claim of discrimination concerning a contractor or the union itself. Both the Hiring Hall and Referral Hall Rules of Operation prohibit discriminatory conduct and provide a procedure by which complaints must be raised. Further, upon receipt of Plaintiff's charge of discrimination, Local 597 treated the charge as the filing of a grievance. (¶ 78). Local 597 requested Plaintiff to provide the union with information concerning his charge and complaints so that the grievance

could be pursued and investigated. (¶ 78). However, Plaintiff chose not to respond. (¶ 79). Without any response or information from Plaintiff, Local 597 closed the matter. (¶ 79).

Concerning Plaintiff's race discrimination claim, Plaintiff has failed to present any evidence in support of his claim. He has not identified any non-Black individual who was referred out for a job for which Plaintiff should have been referred. He has presented no evidence that Local 597 manipulated the operation of the Halls or played any role in the selection of either jobs or members referred through the Halls. He has presented no evidence that the exceptions that existed under the Hiring Hall Rules were applied in a discriminatory manner by Local 597. His claim is simply that he has not been hired by contractors for the better part of the past ten years; however, he acknowledged that the rules associated with the operation of the hall (i.e. payment of dues, no missed calls, etc.) were applied to all members regardless of race. In short, Plaintiff has presented no evidence that Local 597 has acted in an unlawful manner with respect to the only part of the process it controls, the operation of the Hiring and Referral Halls. Where any claimed discrimination is alleged to have occurred in his hire, layoff or terminations, or hours assigned, all of which are controlled by the employing contractor, Plaintiff never filed a grievance. As Plaintiff cannot satisfy his legal burden of proving that Local 597 acted arbitrarily, discriminatorily or in bad faith, summary judgment should be granted as to Count IV.

## V. CONCLUSION

For the foregoing reasons, Defendant asks this Court to grant its Motion for Summary Judgment as to all claims.

130745685v1 0917692

|  | Respectfully submitted,<br>HINSHAW & CULBERTSON LLP |
|---|---|
| Tom H. Luetkemeyer<br>Aimee E. Delaney<br>Hinshaw & Culbertson LLP<br>222 N. LaSalle, Suite 300<br>Chicago, IL 60601<br>312-704-3000 | By: s/Aimee E. Delaney<br>     Aimee E. Delaney |

Dennis Johnson
Joseph E. Mallon
JOHNSON & KROL, LLC
300 South Wacker Drive, Suite 1313
Chicago, Illinois 60606
(312) 372-8587

## Certificate of Service

I, the undersigned, an attorney, state that I served the above and foregoing Defendants' Memorandum of Law in Support of Its Motion to for Summary Judgment by electronic means pursuant to Local Rules 5.5 and 5.9 and by Messenger on Plaintiff at 536 Morris Avenue, Bellwood, IL 60104 on February 14, 2013.

/s/     Aimee E. Delaney

130745685v1 0917692